## PARKER v. FILM TRANSIT CO.

(Division B. April 26, 1943.)

[13 So. (2d) 159. No. 35307.]

**J. O. Eastland,** of Ruleville, **C. C. Pace,** of Cleveland, and **J. J. Breland** and **R. L. Cannon,** both of Sumner, for appellant.

544

Brewer & Sisson, of Clarksdale, Neill, Clark & Townsend, of Indianola, and Watkins & Eager, of Jackson, for appellee.

546

Argued orally by **R. L. Cannon**, for appellant, and by **Ed. C. Brewer** and **Elizabeth Hulen**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee, a partnership, in Memphis, Tennessee, was engaged, under common carrier certificates, later to be mentioned, in the business of transporting motion picture films to and from theatres over a large territory, including the larger part of this state. These films were delivered at night. About 1:30 p. m. on October 2, 1940, appellee learned that a film due to have been delivered to Moorhead, Miss., the night before had failed of delivery, and appellee began at once to arrange to send the film by one of its own trucks to Moorhead so as to reach there by 7 p. m. While this was being arranged, a theatre operator named Jackson, and whose place was at Ruleville only twenty-two miles from Moorhead, happened to be in appellee's office in Memphis, and inasmuch as Jackson was departing at once for Ruleville, it was agreed between appellee and Jackson that the latter, for a stipulated compensation would take the film to Ruleville and thence to Moorhead, which, as stated, was only twenty-two miles further.

Appellee's witnesses testified, and we think the trial court was well justified in accepting their testimony as true, that it was distinctly understood that Jackson himself was to make the delivery, and that it was the firm agreement that no other person was to be entrusted with it. Nevertheless, when Jackson reached Ruleville, he placed the film in the charge of a seventeen-year-old girl with directions to her to deliver it to Moorhead. In the trip from Ruleville to Moorhead the girl negligently drove her automobile into the rear of a wagon in which appellant was riding, inflicting severe injuries for which appellant sued appellee but was denied recovery by the trial court.

The duties of a common carrier of freight or passengers may be delegated to an independent contractor except (1) so far as concerns duties owed to passengers or in the handling and delivery of freight, or (2) when the contractor is required or allowed by the contract to perform functions or to employ instrumentalities which in the nature thereof are inherently dangerous to members of the public. There was no damage in the case at bar to the freight, and, under the decisions in this state, the operation of an ordinary automobile is not in its nature dangerous. Hence, there is no liability against appellee if Jackson is to be considered as an independent contractor.

And the same result must follow under the view that Jackson was a servant or employee of appellee. The chancellor found from the evidence, as already mentioned, that it was distinctly understood between appellee and Jackson that he himself, and not some other person to be selected by him, was to make the delivery at Moorhead. The rule in this state, and in all states so far as we have traced it, is that a master is liable under the doctrine respondeat superior for the tortious acts of a servant done in the scope and course of his employment, when the particular servant has been employed by the master, when the master has had the privilege of choice, but not for the torts of a substitute, employed by the servant himself who had neither the express nor the implied authority from the master to select such a substitute.

Appellant's contention seems to be, however, that inasmuch as appellee was operating under a certificate of public convenience and necessity issued both by the Interstate Commerce Commission and the Mississippi Public Service Commission, and the delivery here being made was over one of the authorized routes and although in an emergency and only for the isolated occasion, the person operating the automobile in the delivery of the film in the furtherance of appellee's certified business must be considered the agent or employee of appellee whoever

that person was and regardless of the manner by which the particular tort-feasor happened to have been so engaged.

Conceding that this may be true where the injury has been to a passenger or the damage to freight, or where the injury has been to a member of the public when the carrier has authorized or contemplated the use of an inherently dangerous agency or instrumentality, there is no such case here; and no authority in point has been found for extending the liability further. The doctrine respondeat superior under established rules is already stringent enough, and we must decline to enlarge it in the absence of authority in the books for so doing.

We may use here a clarifying illustration: An express company is under duty, we will say, either by statute or by an established custom, to deliver all express packages to the addressed residence or place of business of each named consignee within the municipal limits. A valuable package has been received, but has been mislaid. The consignee has repeatedly and anxiously inquired by telephone, but has been told that no package has arrived. Two or three days after such inquiries the package is discovered, but after all the express trucks have departed for their last trip of the day. The express agent finds John Doe, whom the agent believes to be trustworthy, and he engages Doe to deliver the package immediately by automobile (Doe's automobile), and pays him to do so. Doe departs with the package, but on the way he turns it over to Richard Roe, who, in undertaking to complete the delivery, negligently collides with another automobile, injuring the occupants thereof and also breaking and destroying the express package. The express company would be liable to the consignee for the value of the package, but not to the third persons injured by Richard Roe.

Affirmed.